178 S.W.3d 457 (2003)
In re ARKANSAS BAR ASSOCIATION  Petition for Creation of the Arkansas Access to Justice Commission.
No. 03-979.
Supreme Court of Arkansas.
December 18, 2003.
PER CURIAM.
The Arkansas Bar Association has petitioned the Court to create the Arkansas Access to Justice Commission. The Bar through the work of its House of Delegates and Access to Justice Working Group ("Working Group") has submitted a detailed recommendation for a commission to coordinate efforts to improve access to the civil justice system for poor and near-poor individuals who cannot afford attorneys for representation in civil legal matters.
The Working Group reviewed access to justice efforts from across the nation in developing its recommendation to create an Arkansas Access to Justice Commission. The recommendation points out that "while there are no comprehensive studies of the unmet civil legal needs of poor and near poor Arkansans, case data from Arkansas' two legal services providers suggest the unmet need is substantial":
 Just 21% of the 12,588 cases Arkansas' two legal services providers completed in 2002 received full representation while 71% were given advice and counsel. While advice met the needs of some, a significant number would have benefited from full representation. An additional 3,022 cases were pending at the end of the year.
 In addition to completed cases, Arkansas' legal services providers had to reject 4,858 cases in 2002 due to conflicts and other factors. This number does not include individuals who call and no case is opened.
 Demand for civil legal services for the poor is increasing. Arkansas' legal services providers completed seven percent more cases in 2002 than 2001. Requests for assistance are expected to accelerate in 2003 due to the declining economy, at a time when staff reductions at Arkansas' legal services providers will make it difficult to maintain the current level of services.
 Despite the growing need, the number of cases handled on a pro bono basis was more or less flat from 2001 to 2002.
 Due to a decline in Arkansas' share of the national poverty population, federal funds will decline in 2003 at the same time that Interest on Lawyers Trust Accounts (IOLTA) funds are decreasing. Arkansas' legal services providers have seen their revenue slashed nearly 20%, making it necessary to eliminate six support staff and nine attorney positions in 2003.
Recommendation dated March 31, 2003 at pages 2-3.
The Court has reviewed the proposal and concludes that a commission charged with the responsibility of assessing access to the civil justice system and furthering access to all Arkansans is called for. We thank the Arkansas Bar Association and the Working Group for its work on this project.
We incorporate the mission, goals, and structure for the Commission as contained in the Working Group's Recommendation and set them out below. Members will be appointed at a later date. The remainder of the Recommendation is appended to the end of this order.

*458 ARKANSAS ACCESS TO JUSTICE COMMISSION

MISSION STATEMENT
The Mission of the Arkansas Access to Justice Commission is to provide equal access to justice in civil cases to all Arkansans.

GOALS
A. Develop an objective and accurate understanding of the problems Arkansans face in using our legal system to obtain justice in civil cases.
B. Devise a strategic plan for statewide delivery of civil legal services to all Arkansans.
C. Review and report on the efficient allocation and application of the available resources.
D. Educate the people of Arkansas about the importance of equal access to justice and of the problems many Arkansans face in gaining effective access to our civil justice system.
E. Encourage a strong and consistent commitment to providing equal access to justice among the leaders of our state.
F. Suggest innovations that will increase effective access to the civil justice system for all Arkansans.
G. Provide technical and other support to the efforts of the legislature, courts, and other government agencies to improve access to justice for the people of Arkansas.
H. Develop stable, long-term funding and other resources to support access to civil justice.

STRUCTURE
A. The Commission shall consist of fifteen voting members, appointed as provided herein. The initial voting members shall draw their initial terms by lot, so that five members shall serve a one-year term, five shall serve a two-year term, and five shall serve a three-year term. All subsequent appointments of voting members shall be for a term of three years. A voting member may be appointed to serve no more than three successive three-year terms.
B. Should any vacancy in the term of a voting member occur, the appropriate appointing authority shall appoint a successor voting member who shall serve the remainder of the term. Any member whose term shall expire shall continue to serve until his or her successor is appointed.

C. Membership.
1. The Arkansas Supreme Court shall appoint five members of the Commission as follows:
(a) one justice of the Arkansas Supreme Court,
(b) two circuit judges, one from a circuit with a total population of more than 100,000 and one from a circuit with a total population of less than 100,000,
(c) one full-time district court judge, and
(d) one representative from the faculty of the University of Arkansas or University of Arkansas at Little Rock Schools of Law.
2. The Arkansas Bar Association shall appoint five members of the Commission as follows:
(a) the President of the Arkansas Bar Association or his or her designee,
(b) one attorney who is either employed as an in-house corporate counsel or whose practice is primarily focused on the representation of corporate clients,
(c) one non-attorney employed in a full time capacity as an advocate for the needs of low income Arkansans, and

*459 (d) two attorneys active in the private practice of law who have demonstrated an interest in the provision of pro bono legal services.
3. The Governor shall be entitled to appoint three members of the Commission as follows:
(a) one non-attorney employed in a full time capacity by a non-profit agency which is dedicated to providing for the needs of low income Arkansans,
(b) one attorney employed in a full time capacity by the Center for Arkansas Legal Services or Legal Aid of Arkansas, and
(c) one non-attorney representative of the Arkansas State Chamber of Commerce.
4. The Speaker of the Arkansas House of Representatives and the President Pro Tempore of the Arkansas Senate shall each be entitled to appoint one member of their respective chambers to serve as members of the Commission.
D. Each of the appointing authorities shall coordinate the appointments to insure that, at all times, the Commission shall reflect the diverse ethnic, gender and geographic communities of the state.
E. In addition to the voting members set out herein, the Director of the Center for Arkansas Legal Services, the Director of Legal Aid of Arkansas, the Director of the Arkansas IOLTA Foundation and representatives of legal clinics at the state's two law schools appointed by their respective deans shall serve as ex officio members of the Commission.
F. The Commission shall, by majority vote, elect a Chairperson from among the voting members who shall serve a term of one year and who may be reelected to successive terms. Such other officers of the Commission may be selected, pursuant to rules established by the Commission.
G. The Commission may create such committees and appoint such committee members as are necessary to facilitate the work of the Commission.

APPENDIX

Recommendation

To Create an Arkansas Access to Justice Commission

Submitted to the
Arkansas Bar Association

By
Access to Justice Working Group
March 2003
"Equal justice under law is not only a caption on the façade of the Supreme Court building. It is perhaps the most inspiring ideal of our society ... It is fundamental that justice should be the same, in substance and availability, without regard to economic status."

Justice Lewis Powell, Jr.

U.S. Supreme Court
Equal justice hinges on all Arkansans being empowered to make their case in a court of law, not only in criminal cases but also in civil matters. Most often, people retain an attorney to make their case for them. Across the nation, however, a growing number of litigants now choose to represent themselves in civil matters. While the reasons vary, most represent themselves because they cannot afford an attorney. When people with limited income and education face a corporation or government agency without representation because they cannot afford an attorney, equal justice under the law can quickly become an unfulfilled promise.
Some 16% of Arkansans live below the federal poverty level, compared to 12.4% nationally. In nine Delta counties, more *460 than 25% of the population lives in poverty. One-quarter of Arkansas adults lack a high school diploma, compared to 20% nationwide. Not only is justice not served when self-represented litigants are unprepared, but these individuals also affect the functioning of the courts. Not surprisingly, the increase in self-represented litigants is occurring at the same time that funding for legal services for the poor is declining.
The National Council of State Courts, the American Judicature Society, the American Bar Association, the National Legal Aid and Defender Association and other national organizations have addressed the causes and consequences of barriers that impede access as well as strategies to improve access to justice in the civil legal system. In response, many states have created a broadly representative commission or similar entity to coordinate efforts to improve access to the civil justice system for poor and near-poor individuals who cannot afford attorneys. These commissions achieve their goals in part by bringing together leaders from the judiciary, private bar, advocacy community, academia, legal services and other interests who share a commitment to improving access to the civil legal system as a means to fulfilling the promise of equal justice under law. Their approaches range from reinvigorating pro bono programs to generating new resources for legal services to developing pro se materials to simplifying court procedures and forms.

National Studies and State Studies Provide Insight
In its landmark Comprehensive Legal Needs Study published in 1994, the American Bar Association found that 38% of poor households and 43% of near poor households in the South had one or more legal problems in the survey year. The most frequently reported legal problems were housing and real property, personal finance and consumer issues, family and domestic needs, and employment. Of these, 37% of poor households and 41% of near poor households sought help either from the civil justice system or a non-legal third party while 24% and 23% respectively reported handling their problem on their own. Even though the study was conducted nearly a decade ago, many states have conducted state-level legal needs studies more recently, most generating similar results.
A 1999 article published by the American Bar Association, Standing Committee on the Delivery of Legal Services, summarized recent research on the frequency of pro se litigation. A 1991 report from the National Center for State Courts examined the incidence of representation in divorce cases in urban jurisdictions. Just 28% of divorces proceeded with both parties represented by a lawyer. Frequently cited studies examining the trend of pro se litigation in domestic relations in Maricopa County, Arizona found that pro se cases in which one party proceeded without a lawyer grew from 24% in 1980 to 47% in 1985 and 88% in 1990. A 1996 Maryland study found 57% of pro se litigants surveyed reported they could not afford a lawyer.

Indicators Suggest Arkansas' Unmet Need is Substantial
While there are no comprehensive studies of the unmet civil legal needs of poor and near poor Arkansans, case data from Arkansas' two legal services providers suggest the unmet need is substantial.
 Just 21% of the 12,588 cases Arkansas' two legal services providers completed in 2002 received full representation while 71% were given advice and counsel. While advice met the needs of some, a significant *461 number would have benefited from full representation. An additional 3,022 cases were pending at the end of the year.
 In addition to completed cases, Arkansas' legal services providers had to reject 4,858 cases in 2002 due to conflicts and other factors. This number does not include individuals who call and no case is opened.
 Demand for civil legal services for the poor is increasing. Arkansas' legal services providers completed seven percent more cases in 2002 than 2001. Requests for assistance are expected to accelerate in 2003 due to the declining economy, at a time when staff reductions at Arkansas' legal services providers will make it difficult to maintain the current level of services.
 Despite the growing need, the number of cases handled on a pro bono basis was more or less flat from 2001 to 2002.
 Due to a decline in Arkansas' share of the national poverty population, federal funds will decline in 2003 at the same time that Interest on Lawyers Trust Accounts (IOLTA) funds are decreasing. Arkansas' legal services providers have seen their revenue slashed nearly 20%, making it necessary to eliminate six support staff and nine attorney positions in 2003.

The Process
The Arkansas Access to Justice Conference brought 118 attorneys, judges and advocates representing Arkansas' justice community together on March 23, 2001 to identify challenges to access and develop a consensus about the most effective institutional vehicle to coordinate statewide efforts to improve access to justice. The conference concluded with a call to action to create a permanent Arkansas Access to Justice Commission. In response, the Arkansas Bar Association convened the Access To Justice Working Group, which held its first meeting in October 2002 (membership list attached). The Working Group's purpose is to determine if a need exists for a permanent Arkansas Access to Justice Commission and, if so, to develop a recommendation for the governance bodies of the Arkansas Bar Association.
To this end, the Arkansas Access to Justice Working Group has met as a body four times since October 2002. In addition, subcommittees have met in between meetings to develop work products for review. Through its deliberations, the Working Group has concluded:
 Fulfilling the promise of equal justice under law requires an ongoing process of continually improving access to the legal system.
 Leaders of the private bar, the judiciary, advocacy organizations, legal services and other Arkansans share a commitment to improving access to justice. Without a coordinated effort, however, progress will remain elusive.
 Improving access to justice hinges on documenting the unmet need in Arkansas, understanding the different dimensions of that need, and devising a long term plan of action, while demonstrating best practices through pilot projects and other means.
 Effective and frequent communication among different interests is fundamental to progress.
 A permanent Arkansas Access to Justice Commission is the most effective forum to bring leaders committed to improving access to justice together and to promote coordinated effort.
To this end, the Access to Justice Working Group recommends that the Arkansas Bar Association submit a formal request to the Arkansas Supreme Court to create a permanent Arkansas Access to Justice Commission *462 with the mission, goals and structure described below.
. . . .
[ ... Mission, Goals, Structure ... have been excerpted and may be found in body of order.]
. . . .

Recommendation
The Access to Justice Working Group recommends that the Arkansas Bar Association submit a formal request to the Arkansas Supreme Court to create a permanent Arkansas Access to Justice Commission with the mission, goals and structure described above.

Access to Justice Working Group
Nate Coulter
Attorney
James D. Gingerich
Administrative Office of the Courts
Charles W. Goldner, Jr., Chair
UALR School of Law
The Honorable James R. Hannah
Arkansas Supreme Court
Louis "Bucky" Jones
Attorney Chalk S. Mitchell
Attorney
Michael W. Mullane
University of Arkansas School of Law
Susie Pointer
IOLTA Foundation
The Honorable Willard Proctor
Circuit Judge
The Honorable Jim D. Spears
Circuit Judge
Carolyn B. Witherspoon
Attorney
Scott Holladay
Carelink
Amy Rossi
Arkansas Advocates for Children & Families
Frank Sewall
Arkansas Blue Cross and Blue Shield

Ex Officio
Don Hollingsworth
Arkansas Bar Association
Jean Turner Carter
Center for Arkansas Legal Services
Mona Teague
Legal Aid of Arkansas
Sandra Miller
Arkansas Legal Services Partnership